Good morning. We have four appeals again this morning to hear. Counsel, we're familiar with your cases, we've read your briefs, the authority cited in your briefs, at least portions of the record. You don't have a lot of time this morning, so feel free to get straight to the heart of your argument. You don't need to educate us about the background of the case. We're probably going to have some questions, but be mindful of the traffic lights and when the red light shines, it is time to wrap it up. If you're answering a question from the court, of course, you can finish your answer. You'll be on our time, but do be respectful of our time. Our first case is United States v. Macrina. Mr. Kish. Good morning and may it please the Court. I'm Paul Kish along with David Bouchard. We represent Ms. Macrina in an appeal from a criminal conviction that has three issues, jury instruction, application of Rule 106 of the Federal Rules of Evidence, and whether or not irrelevant ethics evidence was admitted and how it should be treated. All right, let's get to the jury instruction. While we argue all along, it turns out the Supreme Court says we were right. Okay, we get that. The key to all of this, the court's resolve, it seems to me, we have to, unfortunately, go back to the timeline. The question, though, is it is true that there's a difference between a bribe and a gratuity, and a gratuity is not prohibited, but the problem is whether this jury instruction, the one that you proffered, was an accurate statement of the law or a misstatement, and whether the instructions given were accurate statements of the law. It seems to me that your proposed instruction was focused on the timing of the payment as opposed to the timing of the agreement, and what the Supreme Court recently told us is that it's the timing of the agreement that matters in terms of determining whether it's a bribe versus a gratuity. I agree with everything you just said, Judge, but that's why the facts are so important, because we tailored our jury, our proposed jury instruction to fit the facts of this case. Government action on behalf of the payor all in 2014, 15, and January 2016. She's fired in May of 2016. Benefits given to her were all in April and May, the trip, the cash, all that rigmarole. The job offer is the only thing that fits the government's theory. Now, the job offer comes from two witnesses, and they both said they didn't take it seriously, and that these were witnesses who were friends of Ms. McRenas who said that after she was fired, they helped her send her resume to people other than Jafari, meaning she had not yet decided to accept the offer. So the thing with the offer is there's more than just a job offer, there has to be an acceptance. Let's talk, as opposed to the facts, let's talk about whether the instruction, though, was an accurate statement of the law, because it seemed to me that your instruction would have told the jury that if payment came after, then it's categorically a gratuity. And that seems to me that it's clearly wrong based on the recent decision of the Supreme Court. I agree with you, but that's why under the facts here, if he made an offer, that by itself cannot be a bribe until she accepts it. And the only evidence of her acceptance of the If your challenge is the refusal to give your proposed jury instruction, and your proposed jury instruction misstated the law, then there's no error by the district court. That I would agree with, but it did not under the facts of this case is our point. Because if there had been an offer by Jafari outstanding for years, yet she never accepts it, but then she in her mind decides to accept it, that's the agrees to accept language. But if she picks up the phone to him and says, I accept it, that's why we included present tense word accept. Because of that, we believe that our proposed jury instruction was an accurate statement of and a prediction of what Snyder eventually held. And the failure, it's also important to note, the government never objected to that word in the lower court. The government, remember, was taking the position that gratuities are covered. So they've been wrong on the legal issue, and there's a way to look at this that they've waived that argument. Your instruction told the jury that it found that the defendant accepted or agreed to accept anything of value after performing, then it has to be a gratuity, not a bribe, right? Correct. Well, you could accept, even though you had agreed earlier to the bribe, but your instruction told them that just the mere acceptance alone means that the defendant's not guilty. That's a misstatement of the law. With all due respect, I disagree with that method of looking at the language words we proposed. We think it tracks and predicted the outcome in Snyder completely, especially considering the facts here. But more importantly, the reason this was so important is because it hamstrung us in closing argument. We were reduced to arguing the timing of everything when, in fact, what we wanted to argue was if our view of the timing is correct, it's not a crime. Not that she didn't have corrupt intent, but it is not a crime under Section 666. That is the biggest import of the district judge's decision to decline our proposed instruction. Now remember, the district judge was saying the 11th Circuit's McNair opinion, based on the government's argument, covered the waterfront on this. Well, A, McNair never did. McNair was never cited in Snyder. And B, McNair was just wrong. It doesn't cover gratuities. So we think that, especially under the facts of our case, our proposed instruction was an accurate statement of the law. When it comes to how does this court review this issue, the government keeps touting the abuse of discretion standard. Well, that's true, but it's not entirely true. Remember, the abuse of discretion standard when there's a jury instruction also includes a review of whether the, as Judge Pryor was saying, the legal proposed instruction was correct. That's a de novo review. We don't defer to the district court on whether the legal instruction was correct under the facts of this case. We say it was. Could you just respond to the government's argument a little bit? You started to do it, but play out your response to the government's harmless error argument that this was not, the way I understand their argument is, and maybe it's not harmless error, maybe it's more just a reason why this instruction was not so important, is that the government's position at trial was not that this was a gratuity and that your client was liable for receiving the gratuity, and so the government's position was, in the entire time, was that your client should be convicted because this was a corrupt deal. What do you say about that? They made that argument because they convinced the district judge that the gratuity distinction was irrelevant. If the district judge had told the jury if it's a gratuity, she simply hasn't committed any crime whatsoever, they would have had to argue differently. But they used their ruling to their benefit in greatly expanding their argument and saying, oh, it's all about corrupt intent. And also, the standard... Yeah, I guess, I just, I don't, and I think I may just be missing something. I don't understand that. I don't understand how that, the government, I guess, if you look at the Supreme Court's case, for example, if you look at the Supreme Court's case, the government in that case prosecuted that person on the theory that they had received a gratuity, I think, and they were convicted on that basis. No? In Snyder, this is from the Seventh Circuit's opinion, not the Supreme Court's opinion. In Snyder, Mr. Snyder proposed a jury instruction would have defined a bribe in a gratuity and instructed the jury to acquit if the government proved he solicited or accepted a gratuity paid after the fact. Right. So, in many ways, Snyder was in the exact same posture we were. Mr. Snyder proposed a jury instruction that used the present tense word accept. It was denied. Supreme Court reversed. Kind of simple, if you look at it that way. So going back to what you argued about de novo review, so you're arguing that we should review the instruction for plain error? No, not at all. What we're saying is, while the decision to decline a proposed jury instruction is generally reviewed for abuse of discretion, one component of that review is, as Judge Prior pointed out, that the proposed instruction has to be legally correct. The question of whether it's legally correct is reviewed de novo. That's from the Takaloff case and the other authorities both parties cited. So this specific discussion we're having now, I suggest, is reviewed de novo. Okay. And that's the only argument you've made in that regard. Okay. I got it. That is, when your proposed instruction misstated the law, we reviewed de novo. Correct. All right. But then how do the facts come into it? If the only question we're reviewing de novo is whether it's a correct statement of law, what does it matter what the facts of the case are? It's a correct statement of the law. Under the facts of this case, there's plenty of authorities that talk about how the jury instructions have to be tailored to the facts. But I thought that's where the abuse of discretion analysis comes in is that you can have a correct statement of the law, but the district court could still say, you know, I don't think it's necessary to give that instruction. You know, it's just going to, I mean, you know, I tried a, during my brief time as a district court, I tried a very complicated intellectual property case and there were all sorts of instructions that were appropriate statements of the law that I was throwing out because otherwise I would have been reading instructions for like a day and a half. So, I mean, isn't that where the abuse of discretion comes in? Yes, but we come back to our main argument, which is our belief, our suggestion, is that the language we use is a legally accurate statement of the law, especially when you compare it to Snyder and then Legislature and then the background of Snyder. The Rule 106 issue, just briefly, essentially the government wanted to tell the jury in the pieces of the evidence they took out that Jafari gave our client several thousand dollars, says spend it on whatever you want. She says I spent close to all of it and I kept several thousand and kept the cash. But what they didn't get a chance to hear, what was kept away from them, was that she denied using it for herself, denied using it to buy stuff for herself, the leftover cash was kept by her and she used it for his wife's gifts. She didn't get a chance to say all of that. Now, the government says we didn't perfect this record, we suggest that the court take a look at document 144-4, which is the district judge saying they gave it to me, I didn't review it because of my view that Rule 106 doesn't apply to statements that are not in detention. Therefore, the judge says I'll let you put it in the record, but I'm not even going to review it. So we can't help it if the judge didn't review it. It was presented to the district judge both before trial, during trial, and after trial. And this was harmful. This was a close case. And we think that the failure to allow the jury to hear this was harmful error. Okay, Mr. Kish, you've saved four minutes for rebuttal. Let's hear from Mr. Kitchens. Good morning, may it please the court. I'm Ian Kitchens on behalf of the United States. Tell me this. If the proposed instruction had been an accurate statement of the law, would it have been error not to give it? That is, if it had accurately predicted Snyder, had been focused on the timing of the agreement, not the payment, would it have been error not to give it? No. Even leaving aside Why? Going to the third prong of the abuse of discretion argument, which is whether the instruction as offered, or the absence of the instruction, would have, in fact, was so vital to the defense that it substantially impaired the defense presented by the defendant in that case. And this is simply not the issue. In fact, if you look at the Fourth Circuit and Jennings, it's very similar where Tell me this. Was at least one theory of the defense here that there was no antecedent agreement? There was, I would say that's at least one theory that was presented. Okay. And would the jury have necessarily understood from, let's assume that all the instructions that were given were correct statements of the law, would the jury have been able to infer, understand that the absence of an antecedent agreement meant that the defendant would be not guilty? Yes. Based on the party's arguments, it was clear that both parties said No, no, no. Arguments are one thing. Instructions are another. What in the instructions would have alerted the jury to that? So, the argument, I think, is based on what it means to have corrupt intent. And this is something that, again, was there was no objection. And, in fact, the defendant argued for the pattern instruction on corrupt intent and what that meant. This was the instruction and the definition that was presented and asked for by the defendant. Under the corrupt intent definition, you had to request something for an unlawful end or unlawful means to an end. Based on that, and that was consistent with the party's instructions, I think the jury would have understood that the only way that they could convict was the bribery theory that was presented and argued by the parties. Yeah. Well, here's the actual instruction, right? So, the district court instructed the jury that they were to consider whether the defendant was an agent of the City of Atlanta who accepted or agreed to accept a thing of value and who, in return for the acceptance or agreement to accept, intended to be influenced or rewarded for a transaction or a series of transactions of the City of Atlanta involving something worth $5,000 or more. And it did add corrupt intent as well. But it does seem, is that enough to put the jury on notice that there has to be an antecedent agreement? This issue, of course, was not something that was briefed by the parties because the defendant, in fact, requested the exact pattern instruction that was provided. Based on Snyder itself, it noted that the crutch of the distinction between a gratuity and a bribery. In other words, the instruction I just read was something the defendant wanted. Correct. It was a pattern instruction that was requested by the defendant. The only issue on appeal is whether the additional, the court erred in refusing to provide the additional instruction whereas, I think, Chief Judge Pryor, you noted and I think I heard essentially concessioned that it was a misstatement of law under Snyder. There's a suggestion to try to get around that, that somehow it's this mixed inquiry of fact and law. And I think, Judge Pryor, as you noted, that that's not consistent at all with de novo review. It is a pure question of law. It was a misstatement of law. Snyder reaffirmed that. And based on that, at step one, you don't really infer if there had been, however, this instruction and if he had properly phrased a gratuities instruction under that third prong. Still, this is where the abuse of discretion comes in. Judge Jones did not abuse his discretion in declining to give that instruction because there was no factual basis suggesting that somehow this was a gratuity. It was some sort of after the fact reward by Jeff Jafari to Ms. Macrina. All of the evidence and testimony was whether she accepted a benefit, whether she then, you know, took improper action somehow to steer contracts to Jeff Jafari. That was the focus of the party's arguments. It had nothing to do with whether she was somehow rewarded after the fact. And that's very similar to the Fourth Circuit in Jennings, where the court basically said, you're not entitled to a gratuities instruction because the facts and the arguments did not support a gratuities instruction. The case law is also clear from Gaines and Gomez, those sorts of cases, that the issue has to be properly presented based on the evidence and the record that's before the jury in order for a judge to suggest that an instruction, even if it were a correct statement of law, is something proper to provide. Is it fair to say that the defendant agreed with the pattern jury instruction when the defendant also said, we need this other instruction to make it correct? That was not the argument that was presented at the charge conference. He proposed the pattern instruction, and then he had a series of supplemental instructions that he sought. So the charge conference, if you look at the transcript, it's roughly 30 pages later that there's this discussion of the post-act payment instruction that Mr. Kish provides. He also notes, by the way, he suggests that the government didn't raise an objection on this point, and the government did, in fact. We noted, certainly, the case law in McNair, but we also said it was an incorrect legal principle. This is document 171, page 124. It would be an incorrect legal principle to suggest that you could accept some sort of pledge, agree to have a pledge that you're going to get some sort of future benefit in the day after you leave the city, if you accept that pledge, that that's not a bribe. We said there was absolutely no case law supporting that. That clearly teed up this issue for the defense, and the did not go back and adjust their instruction. They stuck to their guns and said, no, in fact, the jury needs to be instructed that if you receive some sort of benefit that comes after the official act, that that's not a violation of section 666. Snyder makes it very plain, that is a complaint. Their proposed instruction, in fairness, had some accuracy and inaccuracy, right? I mean, it did say, if the agreement's after the fact, not guilty, but it appears to me, at least, to be the problem is that it also instructed the jury, would have instructed the jury that acceptance after the fact is enough to acquit. That's the entire issue, and that's why at the first prong of the abuse of discretion argument that it fails. As a matter of law, it's an incorrect misstatement of law, and at this point, based on 11th Circuit authority, the panel doesn't need to look any further. It stops right there, and that's the error. I do want to shift to the rule of completeness argument, unless there's any... Even though there's been no argument about it? There was a brief argument on the rule of completeness, I think. No, there was just a mention of the fact that there is one. I don't think there was actually an argument, but if you want to just give your adversary a free shot, that's your call. I'm happy not to provide an argument. We haven't had argument about it this morning, so it wouldn't be anything to rebut. That's fair, Your Honor. I am happy to rest on our briefs on that. Always a guardian of our time. I mean, look, it's actually an interesting issue. It seems to me, let's go ahead and move on. Any error was harmless, because the defense never identified which portions in fairness ought to be heard, which is what the rule requires. That's the crux of the issue, is the defendant failed to lay the foundation for any admission of additional statements under Rule 106. It didn't identify for the district court the problems with the government's proposed excerpts from the recorded statement. And then he also failed to identify any additional recordings that would have somehow corrected. The rule of completeness, I mean, the district court seemed to think that because it was not a custodial statement, that that was the flaw. That's wrong. Do you agree? There's some, it's certainly not the best argument. It's wrong, isn't it? I mean, the rule doesn't say anything about that. The rule says nothing about it. We would actually, to the extent that some district judges might think that, it would be helpful, would it not, for our precedents to make clear, no, that's not the law. Here's what the rule says, that's the law. That would certainly be helpful. I think the district court's language in Santos, where there were included this qualifier saying, we have recognized the rule of completeness extends to post-arrest statements. The district court thought, yeah, that may be true, but that doesn't mean that's all it is. Exactly. And so that's where I think the court is exactly right. The problem, and why by any standard the rule of completeness argument fails, is that there was not a foundation laid. And then also, of course, there's support based on this record, and the court is entitled to affirm on any ground that has a basis in the record that the excerpts that were offered by the defendant were entirely cumulative. Well, they weren't actually offered. They were never identified until after it was all over. Exactly. They were first offered. The defense kept saying, we're prepared to do it, but never actually did it. That's exactly right. Until after the fact. The first time it was offered was document 118, four days after the verdict. It was clear that the defendant, very experienced defense counsel, knew they have an obligation, even if they thought it was going to be a futile argument in front of the district court to make a record. That seems to me to be the problem. And at that step, clearly failed to do so. The only thing the district court had in front of it was an unhighlighted transcript of the full transcript, and had no ability, as the court noted in document 109, it couldn't tell what portions of the transcript the defendant was saying were objectionable. Yeah, and you can't wait until after the trial to say, oh, here's what we thought the jury should have heard. That's correct, Your Honor. That's exactly right, under rule 106, and basic evidentiary rules that you have to lay a proper foundation for it. As the court noted also, it's clear that any sort of error on this end would have been harmless. And this is, again, just based on the nature of the statement itself. This was not a confession. It was never described as a confession. What the government presented and argued was a confession was a February 2019 statement from the defendant, where she said, I took a series of benefits, including this job offer that he extended repeatedly over a three-year period from 2014 to 2016, I took a dime of green, I took landscaping from Jeff Jafari, and also I took $10,000 in cash. That was the confession. A month later, the evidence recorded as soon as Ms. Macrina started to try to walk back some of those statements. So the government's arguments about these recorded excerpts, in closing, you can look at it, it appears that these were attempts and false exculpatory statements by the defendant that showed her corrupt intent. These were not confessions. I just don't see where we even get to that based on what we were just discussing. We agree, Your Honor. She did not properly lay the foundation to introduce it. It would have been cumulative in any event and certainly would have been a harmless error. If there are no further questions from the panel, we rest on our brief and ask the panel to affirm the convictions. Okay. Mr. Kish, you get to argue two points in rebuttal. Okay. I try. Judge says, with this unusual way of looking at Rule 106, the defense can't use anything. That's document number 101. Document number 105, by this time, by the time we get to document 105, the government has given us the eight little snippets. We didn't have that before. No. Then they say, we want to use that. We file something saying, we want to put in our own snippets. Footnote one, the court already has the highlighted transcript. Yeah, except that it's not. The judge says, I'm not even going to read it because I already signed Rule 106. In fact, it was never filed. The judge said he would not read it. Yeah, well, defense needs to make a record. The defense needs to say, here's what it is. Here's what we would have considered. Here's why. But it didn't do it. It didn't file it. The jury instruction. The government focuses on corrupt intent, but that is not the same as saying there's an entire category of the facts that are not illegal. So corrupt intent instruction doesn't solve the problem. Instead, this was more like the Supreme Court's McDonnell case, interpreting official acts under the mail and wire fraud statutes. And remember, in McDonnell, the court said, because the jury was not correctly instructed on the meaning of official act, it may have convicted Governor McDonnell for conduct that is not unlawful. This jury may have looked at the facts without a proper gratuity slash bribery dichotomy instruction and convicted our client for something that we now know is not illegal. To us, that's the problem here. The government says that we have conceded. We are not conceding. We believe that our instruction, when looked at in the light of what Snyder said, in light of how this litigation was handled, we believe that our instruction is an accurate statement of the law. I took what the government to be saying was this, that the instructions that were given, the instruction that I read, was one, is from the pattern, jury instructions, and that you wanted the court to read. You also wanted the court to read the proposed instruction that you were arguing about this morning, but the fault isn't in the instruction given, it's any fault is in the instruction not given.  True. Okay. We had to use the proposed pattern instruction because there had to be some way of instructing the jury how to handle the elements of a 666 case. Right. If you look at the charge conference, and again, with all due respect, the pattern instruction is real hard for trial lawyers, it's not really well set up, and so there was a lot of back and forth with the judge, and we were all trying to come up with the correct formulation of it, where to put the $5,000 and all that kind of stuff. But then we also had two other proposals, which was the safe, what we called the safe harbor under Section 666C, and then another instruction based on, I think it's the Fourth Amendment, are not covered. And so we were trying to help the court properly tailor the instructions, like both sides, everybody wants the instructions that favor them, but that's what we were trying to do here, and that's why, with all due respect, the present tense word accepts, it was completely appropriate under the facts of this case, and in light of how the Supreme Court ruled, they are completely appropriate, because remember, that's what Justice Kavanaugh said. He said the term has to do with whether or not the gratuity is accepted for past official acts. He used accepts. It's almost the same as what we said. No one has made this distinction until this case. I see my time is up. Thank you, Mr. Kish. Well argued, as usual. We're going to move to the second.